**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MARIA M. KIAKOMBUA, *et al.*, <br><br>　　　　　　　　　　Plaintiffs, <br><br>　　　– *versus* – <br><br>KEVIN K. MCALEENAN, in his official capacities as Acting Secretary of Homeland Security & Commissioner of United States Customs and Border Protection, *et al.*, <br><br>　　　　　　　　　　Defendants. | Case No. 1:19-CV-1872-KBJ |

**PLAINTIFFS' SUPPLEMENTAL BRIEF ON SEVERABILITY**

**TABLE OF CONTENTS**

BACKGROUND ........................................................................................................................... 2

ARGUMENT ................................................................................................................................. 3

    I.   THE COURT SHOULD SET ASIDE THE ENTIRE LESSON PLAN .............................. 3

        A.  Traditional Severability Analysis Applies to the Lesson Plan ...................................... 3

        B.  None of the Challenged Provisions of the Lesson Plan is Severable ........................... 4

            1.   The agency did not intend any provision to be severable ....................................... 4

            2.   The Lesson Plan's provisions are so intertwined that it cannot function
sensibly if any is severed ........................................................................................ 6

CONCLUSION ............................................................................................................................ 11

## TABLE OF AUTHORITIES

**Cases**

*Alaska Airlines, Inc. v. Brock*,
  480 U.S. 678 (1987) .................................................................................................. 1, 3

\**Appalachian Power Co. v. EPA*,
  208 F.3d 1015 (D.C. Cir. 2000) ............................................................................. 2, 3, 6

*Davis Cty. Solid Waste Mgmt. v. EPA*,
  108 F.3d 1454 (D.C. Cir. 1997) ..................................................................................... 3

*EchoStar Satellite LLC v. FCC*,
  704 F.3d 992 (D.C. Cir. 2013) ....................................................................................... 6

\**Harmon v. Thornburgh*,
  878 F.2d 484 (D.C. Cir. 1989) ................................................................................ 3, 11

*Matter of L-E-A-*,
  27 I. & N. Dec. 581 (A.G. 2019) ................................................................................... 5

\**MD/DC/DE Broadcasters Ass'n v. FCC* ("*MD/DC/DE Broadcasters I*"),
  236 F.3d 13 (D.C. Cir. 2001) .......................................................................... 3, 4, 5, 6

*MD/DC/DE Broadcasters Ass'n v. FCC* ("*MD/DC/DE Broadcasters II*"),
  253 F.3d 732 (D.C. Cir. 2001) ....................................................................................... 4

*Mendoza v. Perez*,
  754 F.3d 1002 (D.C. Cir. 2014) ..................................................................................... 5

*Nat. Res. Def. Council v. EPA*,
  489 F.3d 1250 (D.C. Cir. 2007) ..................................................................................... 2

*Nat'l Treasury Emps. Union v. Chertoff*,
  452 F.3d 839 (D.C. Cir. 2006) ..................................................................................... 11

*North Carolina v. EPA*,
  531 F.3d 896 (D.C. Cir. 2008) ....................................................................................... 6

*Sierra Club v. FERC*,
  867 F.3d 1357 (D.C. Cir. 2017) ..................................................................................... 6

**Regulations**

8 C.F.R. § 208.13(b) ............................................................................................................. 8

Plaintiffs hereby respond to the Court's January 3, 2020 Order for supplemental briefing on the severability of challenged portions of the Lesson Plan on Credible Fear of Persecution and Torture Determinations ("Lesson Plan").  In response to the Court's specific questions, and as explained further below, Plaintiffs submit that:

(1) *Does the traditional severability analysis apply to provisions of the Lesson Plan on Credible Fear of Persecution and Torture Determinations? See, e.g.,* Alaska Airlines, Inc. v. Brock*, 480 U.S. 678 (1987).*

Yes, traditional severability analysis applies to the Lesson Plan.

(2) *Assuming all of Plaintiffs' nine challenges to the Lesson Plan have merit, can and should all nine provisions be severed from the Lesson Plan document?*

No, assuming all nine challenges have merit, those provisions cannot and should not be severed from the Lesson Plan—rather, the entire Lesson Plan should be set aside.

(3) *Assuming only certain provisions of the Lesson Plan are unlawful, is there any challenged provision that is not severable?*

Yes.  None of the challenged provisions can be severed, and therefore a holding that any one is unlawful requires the entire Lesson Plan to be set aside.

The Lesson Plan is a comprehensive document that directs asylum officers in how to conduct credible fear screenings and how to determine whether an asylum seeker has a credible fear of persecution.[1]  Plaintiffs have identified nine distinct ways in which the Lesson Plan is inconsistent with the law on which it purports to direct.  Each challenged provision is an essential part of an integrated whole: there is no indication that the agency would have promulgated guidance that did not include the challenged portions, and the Lesson Plan does not function as intended if any one of them is omitted.  Because there is at least "substantial doubt" that the agency would have intended to issue a materially incomplete Lesson Plan, the Court

---

[1] *See, e.g.*, Pls.' Combined Corrected Mem. of Law in Supp. of Cross-Mot. for Summ. J. & in Opp'n to Defs.' Mot. for Summ. J. ("Pls.' Br."), ECF No. 38, at 8-9; Pls.' Reply Mem. of Law in Supp. of Cross-Mot. for Summ. J. ("Pls.' Reply"), ECF No. 60, at 3-4.

should vacate the Lesson Plan in its entirety if it concludes that any one of the nine challenged provisions is inconsistent with law. *Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1028 (D.C. Cir. 2000). After the April and September 2019 Lesson Plans are vacated, the February 2017 version of the Lesson Plan (AR 38-84) will be the operative one until Defendants choose to issue a newly revised version, which they are (and will remain) free to do at any time.

## BACKGROUND

This case was filed in June 2019 and, from the start, Plaintiffs have asked this Court to vacate the Lesson Plan in its entirety. *See* Compl., ECF No. 1, at 20; Am. Compl., ECF No. 6, at 26. In their briefing, Defendants repeatedly argued that the Court lacked authority to grant anything but declaratory relief; at no point, however, have Defendants suggested that any part of the Lesson Plan, including any of the nine challenged by Plaintiffs, was severable, or that the Lesson Plan could function if portions were vacated or enjoined.[2] *See* Defs.' Mem. of Law in Supp. of Mot. for Summ. J. ("Defs.' Br."), ECF No. 31-1, at 51-53 (arguing that the Court lacks the authority to award any remedy except declaratory relief); Defs.' Mem. of Law in Opp'n to Pls.' Cross-Mot. for Summ. J. and Reply in Supp. of Defs.' Mot. for Summ. J. ("Defs.' Reply"), ECF No. 49, at 34-35 (arguing that "if the Court grants any relief to Plaintiffs, the remedy is only to declare certain parts of the Lesson Plan as unlawful," but conceding the Court could order vacatur of Plaintiffs' negative credible fear determinations). Plaintiffs, on the other hand, have consistently explained that vacatur of the entire Lesson Plan is appropriate because the pervasive

---

[2] Defendants have suggested that, if the Court concludes that the Lesson Plan's lack of reasoning renders it arbitrary and capricious, the Court should "remand" to let the agency "justify its decision." Defs.' Br. at 53 (citation omitted); *see also* Defs.' Reply at 34 (same); Tr. of Oct. 22, 2019 Hr'g ("Tr.") at 96:10-97:6 (same). As Plaintiffs have explained, the concept of a "remand" here does not make sense, because a remand is neither necessary nor sufficient for the agency to revise the Lesson Plan, and the cases Defendants cite in support are far afield. *See* Pls.' Reply at 32-33. Although not explicit, what Defendants really appear to want is a remand *without vacatur*, which is unavailable when the agency's action is inconsistent with the statutory scheme, as that violation cannot be remedied by additional explanation. *See Nat. Res. Def. Council v. EPA*, 489 F.3d 1250, 1261-62 (D.C. Cir. 2007); *see also* Pls.' Br. at 53.

and intertwined nature of the violations therein means that the challenged provisions are not severable.  Pls.' Br. at 52-53; *see also* Pls.' Reply at 32 (same).

## ARGUMENT

## I. THE COURT SHOULD SET ASIDE THE ENTIRE LESSON PLAN

### A. Traditional Severability Analysis Applies to the Lesson Plan

A court concluding that part of an administrative agency's action is unlawful then conducts the traditional severability analysis to determine whether to invalidate the agency's action in whole or part.  *See MD/DC/DE Broadcasters Ass'n v. FCC*, 236 F.3d 13, 22 (D.C. Cir. 2001) ("*MD/DC/DE Broadcasters I*"); *see also Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 685 (1987) (directing courts holding part of a statute to be unconstitutional to determine whether that part is severable from the rest of the statute).  The purpose of the severability doctrine is to ensure "that agency policy is . . . made, in the first instance, by the agency itself—not by the courts, and not by agency counsel."  *Harmon v. Thornburgh*, 878 F.2d 484, 494 (D.C. Cir. 1989).

Whether the unlawful portion can be severed "depends upon the intent of the agency *and* upon whether the remainder of the [agency action] could function sensibly without the stricken provision."  *MD/DC/DE Broadcasters I*, 236 F.3d at 22 (citation omitted) (emphasis in original). In evaluating the agency's intent, the question is whether "there is 'substantial doubt' that the agency would have adopted [what would remain] on its own."  *Appalachian Power Co.*, 208 F.3d at 1028 (internal quotation marks omitted) (quoting *Davis Cty. Solid Waste Mgmt. v. EPA*, 108 F.3d 1454, 1459 (D.C. Cir. 1997)); *cf. Alaska Airlines, Inc.*, 480 U.S. at 685 (unconstitutional statutory provision should be severed only if remainder would still function "in a *manner* consistent with congressional intent" (emphasis in original)).  If the court has any such doubt, severing the lawful from the unlawful is "not an option," and the court must set aside the agency action in full.  *Appalachian Power Co.*, 208 F.3d at 1028.

3

But even where—unlike here—the agency has expressed a preference for severability, severance is proper only if what remains "could function sensibly without the stricken provision." *MD/DC/DE Broadcasters Ass'n v. F.C.C.*, 253 F.3d 732, 734 (D.C. Cir. 2001) ("*MD/DC/DE Broadcasters II*") (internal citation omitted). If not, the court must invalidate the entire action. *MD/DC/DE Broadcasters I*, 236 F.3d at 22-23.

### B. None of the challenged provisions of the Lesson Plan is severable

Under the test set forth above, the indicators of agency intent and practical considerations present here all point in one direction—the challenged portions of the Lesson Plan were not intended to and cannot function alone.[3] Accordingly, if the Court finds any one inconsistent with law, the Court should vacate the Lesson Plan in its entirety.

#### 1. The agency did not intend any provision to be severable

First and foremost, Defendants did not intend any part of the Lesson Plan, including those challenged by Plaintiffs, to be severable. The Lesson Plan does not contain a severability clause or any similar reflection of the agency's intent that portions of the policy guidance stand on their own. *See generally* AR 1-37. Defendants have not suggested during this litigation that any part of the Lesson Plan is severable, *see* p. 2, *supra*; to the contrary, Defendants have repeatedly emphasized that the challenged portions must be read in the "context" of the entire document even to be understood. *See, e.g.*, Defs.' Br. at 3, 38, 41; Defs.' Reply at 25, 28; *see also* Tr. 51, 54.

In fact, past agency practice evidences the agency's view of the Lesson Plan as an integrated whole: each time Defendants revise the Lesson Plan, no matter how small the changes, they re-issue the entire document rather than attempting to revise it piecemeal. *See generally* AR

---

[3] Of course, since no one of the nine challenged aspects of the Lesson Plan is severable, neither is the totality.

1-37 (April 2019 Lesson Plan); 38-84 (February 2017 Lesson Plan); 88- 134 (February 2014 Lesson Plan); 135-173 (March 2013 Lesson Plan); *see also* AR 85-87 (Memo re: Release of February 2014 Lesson Plan); *cf. Mendoza v. Perez*, 754 F.3d 1002, 1020 (D.C. Cir. 2014) (holding that agency training and guidance letter revising existing procedures constituted new, final agency action because the letter's contents "must stand or fall together; they outline a single compensation package and set of procedures to protect American workers. We cannot separate policies untouched by the [agency action] from those substantially altered by [it]." (citing *MD/DC/DE Broadcasters I*, 236 F.3d at 22)). Most recently, and by way of example, on September 30, 2019, Defendants issued an entirely new version of the Lesson Plan to account for a single administrative decision, *Matter of L-E-A-*, 27 I. & N. Dec. 581 (A.G. 2019), which resulted in substantive changes to only one subsection of the document. *See* Defs.' Status Update, ECF No. 58, at 2; Tr. at 117. This Court can thus rest assured that even if changes are needed in only one part of the Lesson Plan, it should vacate the Lesson Plan in its entirety, because the agency treated the Lesson Plan in that very manner just a few months ago.

The nature of the Lesson Plan reinforces that it should not be dissected. As Plaintiffs demonstrated and as Defendants failed to controvert, the Lesson Plan is a comprehensive policy guidance document that sets out the process and legal standards for credible fear adjudications. *See* Pls.' Br. at 8-9 (citing Pls.' Statement of Undisputed Facts, ECF No. 36-2, ¶¶ 23-41, 47-81); Pls.' Reply at 9 n.14 (quoting Amicus Br. of Nat'l Citizenship & Immigration Servs. Council 119 ("Council 119"), ECF No. 47, at 7).[4] Meant to serve as the foundational reference guide for asylum officers, the Lesson Plan was issued with the single overarching purpose, stated on its

---

[4] The Court can consider Plaintiffs' extra-record evidence with respect to the scope of the remedy. *See* Pls.' Opp'n to Mot. to Strike, ECF No. 59, at 5-7.

5

face, of "explain[ing] how to determine whether an alien subject to expedited removal or an arriving stowaway has a credible fear of persecution or torture." AR 1.  Where the agency has created a training manual to instruct officers on how to conduct legally mandated adjudications, there is no reason to believe that the agency would have issued materially incomplete guidance that did not speak to all aspects of those adjudications.  The circumstances here easily clear the "substantial doubt" threshold set by circuit precedent. *Appalachian Power Co.*, 208 F.3d at 1028; *see, e.g.*, *North Carolina v. EPA,* 531 F.3d 896, 901, 929 (D.C. Cir. 2008) (refusing to sever sections of a comprehensive cap-and-trade air pollution regulatory scheme because the agency "adopted the rule as one, integral action"); *see also Sierra Club v. FERC*, 867 F.3d 1357, 1366 (D.C. Cir. 2017) (holding that plaintiff had standing to challenge agency's order certifying pipeline project despite alleging injury as to only one segment, because the project was a "single, integrated proposal" and the agency would not have certified the project in part).

2. <u>The Lesson Plan's provisions are so intertwined that it cannot function sensibly if any is severed</u>

Indeed, the fact that the Lesson Plan cannot function sensibly without the challenged provisions necessitates that the Court set it aside in its entirety. *See MD/DC/DE Broadcasters I*, 236 F.3d at 23 (vacating regulation in whole where "severing all references to minorities would severely distort the Commission's program and produce a rule strikingly different from any the Commission has ever considered or promulgated"); *Appalachian Power Co.*, 208 F.3d at 1028 (setting aside guidance in its entirety due to "intertwined nature of the challenged and unchallenged portions"); *see also EchoStar Satellite LLC v. FCC*, 704 F.3d 992, 1000 (D.C. Cir. 2013) (holding rules not severable where agency agreed they could not function without the challenged portions).  The violations identified by Plaintiffs are pervasive and interrelated, both to each other and to the rest of the Lesson Plan.  If only parts are set aside, the sections of the

Lesson Plan not specifically challenged by Plaintiffs would not operate as intended: they often rely upon the substance of the provisions challenged by Plaintiffs, and their meaning may change if the challenged provisions are stricken. Nor, for that matter, would the document as a whole operate as intended: it is meant to function as comprehensive guidance for asylum officers conducting credible fear adjudications, and partial vacatur would render it incomplete and incomprehensible.

In particular, by reading the Lesson Plan, asylum officers are supposed to "be able to correctly make a credible fear determination consistent with the statutory provisions, regulations, policies, and procedures that govern whether the applicant has established a credible fear of persecution or . . . torture." AR 1. Striking individual subsections of the Lesson Plan while leaving others standing would undermine this objective. Asylum officers would be left without any guidance on specific topics, and it would be unclear what guidance they should apply instead—especially given that there were many changes made from the prior version of the Lesson Plan in addition to those challenged here. The result would be confusing for asylum officers and others who rely on the document, who would now be forced to figure out which legal standards from what documents apply to the high volume of cases they have to adjudicate each day. *See* Amicus Br. of Council 119 at 9-11 ("Asylum officers lack the ability to expend additional time and resources navigating ambiguous or legally inconsistent lesson plans" and "cannot adhere to domestic law and the United States' treaty obligations if their guiding lesson plans are ambiguous.").

The first of Plaintiffs' nine alleged violations—that the Lesson Plan requires asylum officers to undertake discretionary analysis that is appropriate only at the merits stage, *see* Pls.' Br. at 29-31; Pls.' Reply at 17-18—is illustrative of the overall problems inherent in trying to

disentangle the Lesson Plan's unlawful provisions from the rest.  Defendants implemented this unlawful instruction through at least two changes to the Lesson Plan:  First, as shown in Figure 1 below, Defendants added language directing asylum officers to consider whether a person who is a refugee based on past persecution should nonetheless fail the credible fear screening if they do not make a sufficient showing of entitlement to discretionary approval based on factors set out in 8 C.F.R. § 208.13(b)(1).  *See* Ex. A (Redline), ECF No. 57, at 33.

*Fig. 1*. Screenshot of Redline,[5] page 33, paragraph 1:

> 1. In general, a findings by the asylum officer that (1) there is a significant possibility – that is, a substantial and realistic possibility based on more than significant evidence – that the applicant experienced past persecution on account of a protected characteristic, (2) the conditions that gave rise to such persecution continue to exist in the applicant's home country, and (3) the applicant could not avoid such persecution by relocating within his or her home country, are~~is~~ sufficient to satisfy the credible fear standard. ~~This is because the applicant in such a case has shown a significant possibility of establishing that he or she is a refugee under section 208 of the Act and a full asylum hearing provides the appropriate venue to evaluate whether or not the applicant merits a favorable exercise of discretion to grant asylum.~~
>
> However, if ~~there is evidence so substantial that there is no~~the evidence does not establish a significant possibility of future persecution, ~~or other serious harm~~or other serious harm or ~~that there are no reasons to grant asylum based on~~compelling reasons for being unwilling or unable to return to the applicant's home country given the severity of the past persecution, or reasons why internal relocation is not possible, a negative credible fear determination ~~may be~~is appropriate.[4]
>
> *See* 8 C.F.R. § 208.13(b)(1)(iii)(B). (b)(3).
>
> *See* RAIO Training Modules, *Persecution* and *Well-Founded Fear of*

*See also* AR 18 (relevant section in April 2019 Lesson Plan); AR 35 (same).  The new language both introduces new factors that the asylum officer must (contrary to law) consider at the credible fear stage and instructs the asylum officer that a negative credible fear determination is appropriate if those considerations are present (also contrary to law).  Striking just those references to factors imported from § 208.13(b) would leave behind other parts of the paragraph

---

[5] Green font color denotes text that was absent from the 2017 Lesson Plan but present in the April 2019 Lesson Plan. *See* Ex. H (Decl. of Serena Kumalmaz), ECF No. 57, ¶ 7.  Red font color and red strikethrough formatting denote text absent from the April 2019 Lesson Plan but present in the 2017 Lesson Plan.  *See id.*

that conflict with the law, including new language that holds asylum seekers to a heightened evidentiary standard. *See* Redline at 33 (adding text describing the "significant possibility" standard as "a substantial and realistic possibility based on more than significant evidence," which relates to the third of Plaintiffs' nine challenges). But if the Court were to strike all of the text in Figure 1 instead, the section of the training manual entitled "Establishing a Credible Fear of Persecution" would nowhere explain how asylum officers are to treat past persecution in the credible fear context.

      The second way Defendants implemented the unlawful instruction to undertake a discretionary analysis was to make changes to a later section in the Lesson Plan that provides additional explanation regarding one of the discretionary factors—internal relocation—that are inconsistent with law because they require asylum officers to consider internal relocation even where the asylum seeker experienced past persecution. The prior version of the Lesson Plan had separate sections for considerations relevant to past persecution, on the one hand, and a well-founded fear of future persecution, on the other. *See* AR 23, 27. In the April and September 2019 Lesson Plans, Defendants collapsed this distinction and combined the two sections. *See* Redline at 34, 43.

*Fig. 2*. Screenshot of Redline, page 34, section B:

> **B. Past Persecution/Well-Founded Fear of Future Persecution**
>
> 1. <u>Elements Required to Establish a Credible Fear</u>: In order to establish a credible fear of persecution, the applicant must establish each one of the elements below, to the satisfaction of the asylum officer. If the applicant is not able to establish all of the elements, the applicant must receive a negative credible fear determination.
>
>    *See* RAIO Training Module, <s>Persecution</s>*Well Founded Fear*.
>
> 2. <u>Severity of Harm</u>: For a credible fear of persecution, there must be a significant possibility the applicant can establish

*Fig 3*. Screenshot of Redline, page 43, section C:

> C. Well-founded Fear of Persecution
> 1. When an applicant does not claim to have suffered any past harm or where the evidence is insufficient to establish a significant possibility of past persecution on account of a
>
> *See RAIO Training Module, Well Founded Fear.*

*See also* September 2019 Lesson Plan, ECF No. 58-1, at 19. Furthermore, the new, combined section ("Past Persecution/Well-Founded Fear of Future Persecution") begins by stating that an asylum seeker must establish every single one of the elements listed thereunder, which, in prior versions of the Lesson Plan, would have applied differently depending on whether the asylum seeker was claiming past persecution or only a well-founded fear of future persecution. *See* Redline at 34, 43.

In addition, Defendants added language to the subsection on internal relocation, which is one of the elements listed under the newly combined past persecution/well-founded fear section. In paragraph (b) of the internal relocation section, a new second sentence specifies that for applicants who have *not* established past persecution, the burden of proving that internal relocation is not possible is on the applicant.

*Fig 4*. Screenshot of Redline, page 48, paragraph B:

> b. If the persecutor is a non-governmental entity, there must be a significant possibility that the applicant ~~can demonstrate that there is no reasonable internal relocation option.~~ cannot reasonably internally relocate within his or her country. In cases in which the persecutor is a non-governmental entity and the applicant has not established past persecution, the applicant has the burden of establishing that internal relocation is not reasonable.
>
> 8 C.F.R. § 208.13(b)(3)(i).

This distinction changes the meaning of the first sentence, which states that there must be a significant possibility that the applicant cannot reasonably internally relocate within their country. Under the previous lesson plan, this statement would have applied only to applicants who had not shown past persecution, but Defendants' changes render it applicable to even those

10

applicants who *have* shown past persecution.  As a result, to restore the meaning of this section, the Court would have to both strike provisions and headings in the Lesson Plan.  Not only would this render the section incomprehensible, by not having any headings directing asylum officers as to when these considerations apply, but it would remove any mention of the burden of proof on internal relocation as it may apply to other applicants.

The Court should decline to dissect the Lesson Plan in this manner.  Courts "are obliged to respect the fundamental principle that agency policy is to be made, in the first instance, by the agency itself" and "not attempt . . . to fashion a valid regulation from the remnants of the old rule."  *See Nat'l Treasury Emps. Union v. Chertoff*, 452 F.3d 839, 867 (D.C. Cir. 2006) (internal quotation marks omitted) (quoting *Harmon*, 878 F.2d at 494) (affirming district court's vacatur of entire rule).  The Lesson Plan is unlawful and should be set aside, and it will be the agency's responsibility to revise and replace it once invalidated.

## CONCLUSION

As set forth above, in Plaintiffs' foregoing motion papers, and during oral argument, Plaintiffs respectfully request that the Court vacate the April and September 2019 Lesson Plans in their entireties.

| | |
|---|---|
| Dated:  January 27, 2020 | Respectfully submitted, |
| | /s/ Deepa Alagesan |
| Justin B. Cox (D.C. Bar. No. 1004233) | Deepa Alagesan (D.D.C. Bar No. NY0261) |
| INTERNATIONAL REFUGEE ASSISTANCE PROJECT | Kathryn Austin |
| | Mariko Hirose (D.D.C. Bar No. NY0262) |
| PO Box 170208 | INTERNATIONAL REFUGEE ASSISTANCE PROJECT |
| Atlanta, GA 30317 | |
| Telephone: (516) 701-4233 | One Battery Park Plaza, 4th Floor |
| jcox@refugeerights.org | New York, New York 10004 |
| | Telephone: (516) 838-7044 |
| | dalagesan@refugeerights.org |
| | kaustin@refugeerights.org |
| | mhirose@refugeerights.org |
| | |
| | Manoj Govindaiah (D.D.C. Bar No. TX0145) |
| | Maria Osornio |
| | REFUGEE AND IMMIGRANT CENTER FOR EDUCATION AND LEGAL SERVICES |
| | 802 Kentucky Ave. |
| | San Antonio, TX 78201 |
| | Telephone: (210) 226-7722 |
| | manoj.govindaiah@raicestexas.org |
| | maria.osornio@raicestexas.org |
| | |
| | *Attorneys for Plaintiffs* |