# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARIA M. KIAKOMBUA, *et al.*, <br><br>　　　　　　　　　Plaintiffs, <br><br>　　– *versus* – <br><br>CHAD F. WOLF, *et al.*, <br><br>　　　　　　　　　Defendants. | Case No. 1:19-CV-1872-KBJ |

**PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING *GRACE***

**TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................................................1

BACKGROUND .............................................................................................................................1

I.   *GRACE* FORECLOSES DEFENDANTS' ARGUMENTS THAT THIS COURT LACKS JURISDICTION TO REVIEW THE LESSON PLAN UNDER 8 U.S.C. § 1252(e)(3) AND THE APA ..................................................................................................................2

II.  *GRACE* ESTABLISHES THAT PLAINTIFFS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON THEIR ARBITRARY & CAPRICIOUS CLAIM .......................6

III. *GRACE* FORECLOSES DEFENDANTS' ARGUMENTS THAT 8 U.S.C. § 1252(f)(1) & (e)(1)(A) PROHIBIT THIS COURT FROM GRANTING THE REQUESTED RELIEF ...........................................................................................................................9

CONCLUSION..............................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Grace v. Barr*,
  __ F.3d __, 2020 WL 4032652 (D.C. Cir. July 17, 2020) ................................................. *passim*

*Grace v. Whitaker*,
  344 F. Supp. 3d 96 (D.D.C. 2018) ........................................................................................ 1

*Judulang v. Holder*,
  565 U.S. 42 (2011) ................................................................................................................ 8

*Make the Road New York v. Wolf*,
  962 F.3d 612 (D.C. Cir. 2020) ........................................................................................... 4, 5

*Matter of A-B-*,
  27 I. & N. Dec. 316 (A.G. 2018) ................................................................................. *passim*

*Physicians for Social Responsibility v. Wheeler*,
  956 F.3d 634 (D.C. Cir. 2020) .............................................................................................. 7

*Southwest Airlines Co. v. FERC*,
  926 F.3d 851 (D.C. Cir. 2019) .............................................................................................. 7

**Statutes**

8 U.S.C. § 1158 ............................................................................................................................ 3

8 U.S.C. § 1225(b) ............................................................................................................. *passim*

8 U.S.C. § 1252(a)(2)(A)(iii) ...................................................................................................... 4

8 U.S.C. § 1252(e)(1)(A) ............................................................................................................ 9

8 U.S.C. § 1252(f)(1) .................................................................................................................. 9

*8 U.S.C. § 1252(e)(3) ....................................................................................................... *passim*

**Other Authorities**

Appellants' Br., *Grace v. Barr*,
  No. 19-5013, 2019 WL 2387619 (D.C. Cir. June 5, 2019) ................................................ 2, 4

Appellants' Reply Br., *Grace v. Barr*,
  No. 19-5013, 2019 WL 3987622 (D.C. Cir. Aug. 22, 2019) .............................................. 5, 9

USCIS, Guidance for Processing Reasonable Fear, Credible Fear, Asylum, and Refugee Claims
  in Accordance with *Matter of A-B-*, PM-602-0162 (July 11, 2018) .................................. *passim*

## INTRODUCTION

As this Court anticipated, the D.C. Circuit's resolution of the appeal in *Grace v. Barr*, __ F.3d __, 2020 WL 4032652 (July 17, 2020), resolves several key issues that have been contested in this case. In fact, controlling authority now establishes conclusively that: (1) this Court has jurisdiction because the Lesson Plan qualifies under 8 U.S.C. § 1252(e)(3) as a written policy guideline, directive, or procedure that implements the expedited removal statute, 8 U.S.C. § 1225(b); (2) Plaintiffs are entitled to judgment as a matter of law on their claim that USCIS acted arbitrarily and capriciously by failing to acknowledge and explain the numerous departures from past policy and practice it made in the 2019 revisions to the Credible Fear Lesson Plans at issue here,[1] as measured against the 2017 version of the same Lesson Plan that sets the relevant baseline; and (3) this Court has the authority to grant all the relief that Plaintiffs seek.

## BACKGROUND

*Grace* resulted from the government's appeal of a decision by Judge Sullivan that granted summary judgment in relevant part to a group of asylum seekers and permanently enjoined several policies that were collectively contained in two documents: *Matter of A-B-*,[2] an administrative decision issued in an asylum case by then-Attorney General Sessions, and a USCIS memorandum[3] (hereinafter, "Guidance") issued shortly after *A-B-* to provide asylum officers further guidance on that decision. *See Grace*, 2020 WL 4032652, at *3-4; *see generally Grace v. Whitaker*, 344 F. Supp. 3d 96 (D.D.C. 2018). On appeal the government argued that the district court lacked jurisdiction because neither *A-B-* nor the Guidance were reviewable under § 1252(e)(3); that it was wrong on the merits when it granted summary judgment to the asylum seekers under the APA and

---

[1] *See* Am. Compl., ECF No. 6 (stating claims as to April 30, 2019 Credible Fear Lesson Plan); Pls.' Mot. for Leave to Serve a Supp. Pleading, ECF No. 62 (seeking leave to state same claims as to the September 2019 Lesson Plan). Because the two 2019 versions of the Lesson Plans do not differ in material respects, and for the sake of clarity, all references herein to "the Lesson Plan" refer to both 2019 versions of the Credible Fear Lesson Plan.

[2] 27 I. & N. Dec. 316 (A.G. 2018), attached as **Exhibit A**. For ease of cross-referencing citations in the *Grace* opinion, the copies of Exhibits A and B are from the joint appendix in the *Grace* appeal.

[3] USCIS, Guidance for Processing Reasonable Fear, Credible Fear, Asylum, and Refugee Claims in Accordance with *Matter of A-B-*, PM-602-0162 (July 11, 2018), attached as **Exhibit B**.

vacated four specific policies; and that the district court was statutorily prohibited from granting injunctive relief. The *Grace* court's resolution of each of these issues, and their implications for the instant case, are discussed in turn below.

### I. *GRACE* FORECLOSES DEFENDANTS' ARGUMENTS THAT THIS COURT LACKS JURISDICTION TO REVIEW THE LESSON PLAN UNDER 8 U.S.C. § 1252(e)(3) AND THE APA

As in this case, the threshold question in *Grace* was whether the challenged documents qualify as written policy directives, written policy guidelines, or written procedures issued to implement 8 U.S.C. § 1225(b) and were thereby reviewable under § 1252(e)(3). *See* 2020 WL 4032652, at *5. The *Grace* court concluded that both the Guidance and *Matter of A-B-* qualify as "written policy directive[s]" or "written policy guideline[s]" that implement the expedited removal statute, *see id.* at *5-*8, for reasons that foreclose Defendants' contention here that the Lesson Plan does not fall with the scope of § 1252(e)(3).

To conclude that the Guidance and *A-B-* are reviewable under § 1252(e)(3), *Grace* relied on what the documents themselves say about their respective purpose and their relevance to USCIS employees. The Guidance, for its part, "describes itself as a '*policy* memorandum' that 'provides *guidance*' to USCIS officers"; specifically cites the expedited removal statute; and "instructs 'all USCIS employees' on how to apply *A-B-*" in a variety of proceedings, expressly including credible fear adjudications. 2020 WL 4032652, at *5 (quoting Ex. B at App. 353) (emphases in original). Those features, *Grace* held, make the Guidance "a 'written policy directive' or 'guideline' that implement[s]' section 1225(b)." *Id.* (citation omitted, alteration in original). What is more, *Grace* further held that even considering just the government's description of the Guidance in its brief— as "'alert[ing] USCIS officers to new binding precedent and tell[ing] them how to operationalize that precedent in various contexts, including expedited removal'"—the document squarely falls within § 1252(e)(3)'s purview. *Id.* (quoting *Grace* Appellants' Br., 2019 WL 2387619, at *31).

As for *Matter of A-B-*, it likewise "expressly references the credible-fear standard and asylum officers' role in implementing the expedited-removal system," as well as "the statutory

2

provision governing credible fear interviews." *Id.* at *7 (citing 27 I. & N. Dec. at 320 n.1 (Ex. A at App. 326)). The "overarching purpose" of Attorney General Sessions' decision, moreover, was to interpret a statutory provision (8 U.S.C. § 1158, the statute setting out asylum eligibility) that "Congress incorporated into section 1225(b)" by defining "credible fear of persecution" with reference to that same statutory provision. *Id.* (citation omitted). *Grace* explicitly rejected the government's argument (also made here as to the Lesson Plan[4]) that the Guidance and *A-B-* did not fall within § 1252(e)(3) because they implemented § 1158's "substantive asylum standards," rather than § 1225(b). *See id.* at *5 (explaining that this contention "finds no support in the statute's text," which "expressly links the credible-fear standard to the statutory requirements for asylum"). On those bases, *Grace* held that *A-B-* also constitutes a "written policy directive" or "guideline" that implements § 1225(b), making it reviewable under § 1252(e)(3). *Id.*

*Grace* compels the conclusion that the Lesson Plan falls well within the scope of § 1252(e)(3). "[T]he Lesson Plan's stated purpose 'is to explain [to asylum officers] how to determine whether an alien subject to expedited removal . . . has a credible fear of persecution or torture,'" and its contents "cover much of the same terrain as" the expedited removal statute itself. Pls.' S.J. Br. ("Pls.' Br."), ECF No. 38, at 13 (citation omitted, last alteration in original). The Lesson Plan contains at least a dozen direct references to § 1225(b) and approximately thirty more to its implementing regulations, *see id.*, and it states on its cover that asylum officers are expected to "correctly make . . . credible fear determination[s] consistent with" the governing law, "policies, and procedures" that the document purports to convey. AR 1. After *Grace*, these features unquestionably qualify the Lesson Plan as a written policy guideline, procedure, or directive that implements the expedited removal system, *see* 2020 WL 4032652, at *5, even without considering the uncontested evidence Plaintiffs have submitted that further explain the nature of the Lesson Plan and how it is used, *see* Pls.' S.J. Reply ("Pls.' Reply"), ECF No. 60, at 3. *See also* Tr. of Oral Arg. at 55:6-56:12 (detailing additional corroborating evidence from the administrative record).

---

[4] *See*, *e.g.*, Defs.' S.J. Br. ("Defs.' Br."), ECF No. 31-1, at 18-20; Tr. of Oral Arg., ECF No. 65, at 34-36.

3

As with the Guidance in *Grace*, the Lesson Plan also plainly falls within § 1252(e)(3)'s scope even under the government's descriptions of it. *See, e.g.*, Pls.' Br. at 15.

*Grace* additionally dispenses with Defendants' argument that the Lesson Plan is not reviewable because (they claim) it is merely "training material[]," which is not a document type listed in § 1252(e)(3). *See* Defs.' Br. at 21; Defs.' S.J. Reply ("Defs.' Reply"), ECF No. 49, at 5-6. The government made a remarkably similar argument vis-à-vis *Matter of A-B-*, arguing that it did not fit within the statute because it was an adjudication. *See Grace* Appellants' Br., 2019 WL 2387619, at *24. The *Grace* court disagreed, holding that what matters for purposes of § 1252(e)(3) is that the document announces policies implementing the expedited removal statute—not its label. *See* 2020 WL 4032652, at *8. To hold otherwise would give the government the power to "immunize credible-fear policies from judicial review by simply announcing them in" forms not explicitly listed in § 1252(e)(3)—"a result [that] would conflict with section 1252(e)(3)'s purpose." *Id.*; *accord* Pls.' Br. at 14-15, 19; Pls.' Reply at 6-7.

*Grace* also rejected Defendants' third and final argument for why this Court allegedly lacks jurisdiction under § 1252(e)(3), which is based on § 1252(a)(2)(A)(iii) ("no court shall have jurisdiction to review . . . the application of [§ 1225(b)(1)] to individual aliens, including the determination made under [§] 1225(b)(1)(B)"). *See* Defs.' Br. at 22-23. "That provision, however, forbids review of individual aliens' credible-fear determinations, not suits like this that challenge credible-fear policies on their face." *Grace*, 2020 WL 4032652, at *5 (citing *Make the Road New York v. Wolf*, 962 F.3d 612, 626 n.7 (D.C. Cir. 2020)). Section 1252(a)(2)(A)(iii) simply has no application here. *See id.* at *5-7; Pls.' Br. at 15-17; *see also* Pls.' Reply at 3 n.5.

What is more, *Grace* reinforces why Defendants' backup jurisdictional argument—that the statute of limitations bars this Court from reviewing unidentified portions of the Lesson Plan that Defendants claim are not "new," *see* Defs.' Reply at 8-11—is wrong. Despite bearing the burden of proof (on a clear and convincing standard) on this issue, Defendants point to nothing suggesting Congress would want the Court to review a written policy or procedure implementing the expedited removal statute (such as the Credible Fear Lesson Plan) in this piecemeal fashion; and

4

tellingly, the government does not even attempt to describe what would result here from its requested piecemeal review. *See* Pls.' Reply at 5-6. As *Grace* emphasized, "even were section 1252 'reasonably susceptible to divergent interpretation,' circuit precedent requires that we 'adopt the reading that accords with traditional understandings and basic principles: that executive determinations generally are subject to judicial review.'"[5] 2020 WL 4032652, at *8 (citation omitted); *accord* Pls.' Reply at 6-7 & n.10. Here, those fundamental principles merely reinforce the statute's plain text, which authorizes review of the Lesson Plan as a whole, as even Defendants have suggested. *See* Pls.' Reply at 5 ("[Section] 1252(e)(3)(B) requires a challenge to be brought within 60 days of when the challenged *document* 'is first implemented.'" (quoting Defs.' Reply at 8) (emphasis in original)). Regardless, everything Plaintiffs challenge is in fact "new." *See id.* at 6; Pls.' Br. at 17; Tr. at Oral Arg. at 57:2-8.

Relatedly, *Grace* also eliminates Defendants' contention that the Lesson Plan is unreviewable under the APA because it is informal and is not binding.[6] As discussed in more detail in the next section, one of the claims *Grace* considered was that the challenged Guidance set out a "choice of law" policy that departed from USCIS's prior policy without any acknowledgement or explanation of that change, in violation of the APA. *See generally* 2020 WL 4032652, at *11-14. In defense, the government argued that it "had no obligation to acknowledge the change" because the old policy appeared only in the Lesson Plan—the February 2017 version that was subsequently replaced by the April 2019 version challenged here[7]—which the government claimed was merely a nonbinding and informal internal document lacking the force of law. *See* 2020 WL 4032652, at *13; *Grace* Appellants' Reply Br., 2019 WL 3987622, at *15.

---

[5] *Grace* also noted that in *Make the Road*, the D.C. Circuit "expressly reject[ed] the argument that this 'strong presumption' [of judicial review] is inapplicable to section 1252." 2020 WL 4032652, at *8 (citation omitted); *see also Make the Road New York*, 962 F.3d at 624 ("[I]t applies even when determining the scope of statutory provisions specifically designed to limit judicial review.").

[6] Defendants' rationale for why they think it matters whether the Lesson Plan is binding has been a moving target. *See* Defs.' Br. at 25-30 (arguing that sovereign immunity bars Plaintiffs' claims, and the Court lacks jurisdiction, because the Lesson Plan is not a "rule" and is not "final agency action"); Defs.' Reply at 12-19 (conceding waiver of sovereign immunity but trying to recast the arguments on other grounds); *see also* Pls.' Reply at 13.

[7] *See id.* at *11 (noting Feb. 13, 2017 date of the Lesson Plan); AR 38 (Feb. 13, 2017 version of the Lesson Plan).

5

The D.C. Circuit disagreed, concluding that, notwithstanding its informality, the Lesson Plan is sufficiently binding on asylum officer discretion that it "sets the baseline from which future departures must be explained." *Id.* at *13 (citation omitted). *See also* Pls.' Br. at 48; Pls.' Reply at 16 (citing "the undisputed evidence that the Lesson Plan is a source of agency policy that binds the asylum officers conducting credible fear interviews"); Tr. of Oral Arg. at 55:12-22 (noting the evidence in the administrative record demonstrating that "the baseline is set by the Lesson Plan").

## II. *GRACE* ESTABLISHES THAT PLAINTIFFS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON THEIR ARBITRARY & CAPRICIOUS CLAIM

As Plaintiffs have shown, and as Defendants have never disputed, USCIS's 2019 revisions to the Lesson Plan made significant material changes to the policies governing how credible fear interviews are conducted. *See* Pls.' Br. at 9, 28-39; Statement of Undisputed Facts, ECF No. 36-2, ¶¶ 47-81. Likewise uncontested is that neither the Lesson Plan nor anything else in the administrative record acknowledges USCIS's various policy changes—hence the need for a redline comparison, Ex. A, ECF No. 57—or provides any explanation or reasons for making those changes, *see, e.g.*, Defs.' Br. at 46 (conceding that "the 2019 Lesson Plan did not expressly provide its justification"). Following *Grace*, there is no question that these uncontested facts entitle Plaintiffs to summary judgment on their claim that the 2019 Lesson Plan "is arbitrary and capricious due to USCIS's failure to acknowledge and explain its departure[s] from past practice[s]." *Grace*, 2020 WL 4032652, at *14.

On this basis, *Grace* affirmed Judge Sullivan's vacatur and permanent injunction of two policies: the aforementioned choice of law policy, *see id.* at *11-14, and a policy changing the standard applicable to asylum claims involving non-governmental persecutors, *see id.* at *10-11.[8] In so holding, it effectively bars Defendants' defense to Plaintiffs' arbitrary and capricious claim,

---

[8] The latter policy is extremely similar to item #6 on Plaintiffs' list of changes to the Lesson Plan that are contrary to law. *See* Pls.' Br. at 36; Pls.' Reply at 23; *see also* Pls.' Br. at 42 (explaining that all nine policy changes Plaintiffs challenged as "contrary to law"—as well as other changes not challenged as substantively unlawful—also "constitute significant changes to agency policy" that were made "without the reasoned explanation that was required" by the APA (citations omitted)).

6

and in a variety of overlapping ways.

First and most centrally, *Grace* categorically rejected Defendants' position that USCIS's failure to acknowledge and explain the policy changes made through the 2019 Lesson Plan is of no moment because the agency was under no obligation to do so. *See, e.g.*, Defs.' Br. at 46. "Reasoned decision-making requires that when departing from precedents or practices, an agency must offer a reason to distinguish them or explain its apparent rejection of their approach." *Grace*, 2020 WL 4032652, at *12 (quoting *Physicians for Social Responsibility v. Wheeler*, 956 F.3d 634, 644 (D.C. Cir. 2020)). And while the agency has some latitude, "however the agency justifies its new position, what it may not do is 'gloss[] over or swerve[] from prior precedents without discussion.'" *Id.* (quoting *Southwest Airlines Co. v. FERC*, 926 F.3d 851, 856 (D.C. Cir. 2019)).

Second and relatedly, and as discussed above, *Grace* specifically held that USCIS must acknowledge and explain its departures from the February 2017 version of the Credible Fear Lesson Plan, notwithstanding its informality, because (as the government conceded in that case) it "reflected USCIS's 'consistent practice,'" and therefore "'set[] the baseline.'" *Id.* at *13 (quoting *Southwest Airlines Co.*, 926 F.3d at 856).

Third, *Grace* made clear that the requirement that an agency acknowledge departures from prior policy means that, at a minimum, the agency must inform the public of the prior policy that it has changed. *See id.* at *12 (holding USCIS violated this requirement because "readers would have no idea that prior to issuing the [Guidance]," the agency had a policy to the contrary). This holding amply illustrates why Defendants are wrong when they claim that USCIS fulfilled the requirement to acknowledge policy changes made in the Lesson Plan "[b]y issuing a new document with a new date stamp." Defs.' Br. at 45. Just as *Grace* concluded with respect to the choice of law policy, the Lesson Plan "has 'gloss[ed] over or swerve[d] from prior precedents without discussion,' 'cross[ing] the line from the tolerably terse to the intolerably mute.'" 2020 WL 4032652, at *12 (citation omitted); *see also* Pls.' Br. at 42.

Fourth, in light of its statutory mandate to ensure that noncitizens who have a credible fear of persecution "are not summarily removed," "USCIS' failure to acknowledge [a] change in policy

7

is especially egregious" when it has "potential consequences for asylum seekers." *Id.* at *13. As Plaintiffs have explained, the 2019 Lesson Plan's policy changes will result in negative credible fear determinations when positive determinations were previously warranted. *See* Pls.' Reply at 27. Given the undisputed consequences for asylum seekers, Defendants' silence on the policy changes in the 2019 Lesson Plan "fails the APA's requirement of reasoned decisionmaking because it ignores 'an important aspect of the problem.'" *Grace*, 2020 WL 4032652, at *13 (citation omitted); *see also id.* (discussing the expedited removal statute's two purposes, and why an agency's explanation for adopting a policy framed only in terms of the statute's goal of efficiently removing noncitizens "with no lawful authorization to remain" is inadequate, at least where the policy "could undermine" the statute's "equally important goal" of "ensuring that individuals with valid asylum claims are not returned to countries where they could face persecution"); *accord* Pls.' Reply at 27.

Fifth, *Grace* rejected the government's argument that even if the Guidance and *A-B-* contained a "new, more demanding standard" regarding persecution by non-governmental actors, that fact is of no consequence because the documents *also* recited the language of the prior standard.[9] *See Grace*, 2020 WL 4032652, at *10-11. The *Grace* court recognized that if "asylum officers can choose between the two standards, then '[a]n alien appearing before one official may suffer deportation; an identically situated alien appearing before another may gain the right to stay in this country,'" which "is precisely 'what the APA's arbitrary and capricious standard is designed to thwart.'" *Id.* at *11 (quoting *Judulang v. Holder*, 565 U.S. 42, 58 (2011)). In other words, Defendants' claim that the Lesson Plan is saved by its own conflicting instructions or citations, *see supra* n.9, only underscores the arbitrariness of USCIS's actions. *See also* Pls.' Br. at 30-31.

Sixth, *Grace* refused even to consider rationales for USCIS's Guidance that appeared only in the government's brief, on the well-worn principle that "when 'assessing the reasonableness of

---

[9] Defendants have repeatedly made similar arguments here—that even if the Lesson Plan contains new language that is inconsistent with existing law, any deficiency is essentially cured by language elsewhere that *is* consistent with existing law, *see, e.g.*, Defs.' Reply at 24-26, 28; or by the Lesson Plan's mere citations to statutes, regulations, or decisions, *see, e.g.*, Defs.' Br. at 41; Tr. of Oral Arg. at 25:16-23, 53:10-54:6, 86:15-17, 87:8-19.

8

[an agency's action], we look only to what the agency said at the time of the [action]—not to its lawyers' post-hoc rationalizations.'" *Id.* at *14 (citation omitted, alterations in original). So too here, the Court cannot consider the rationales proffered only in Defendants' briefs (which are plainly inadequate in any event), *see, e.g.*, Defs.' Br. at 44-46. *See also* Pls.' Br. at 41, 43.

Finally, *Grace* stated in no uncertain terms what the consequences are for the agency where, as here, it fails to acknowledge and explain its departures from past practice: there is "no choice but to find" that the agency's action is arbitrary and capricious, which, "by itself, requires setting [it] aside." 2020 WL 4032652, at *11; *see also id.* at *14.[10] The substantive lawfulness of the agency's action (i.e., whether it is "contrary to law"), moreover, is irrelevant to whether it satisfied the APA's requirement of reasoned decisionmaking. *See id.* at *10-11, 14.

### III. *GRACE* FORECLOSES DEFENDANTS' ARGUMENTS THAT 8 U.S.C. § 1252(f)(1) & (e)(1)(A) PROHIBIT THIS COURT FROM GRANTING THE REQUESTED RELIEF

As it does in this case, *see* Defs.' Br. at 50-53, the government argued in *Grace* that the district court could only determine the lawfulness of the challenged polices, and lacked the authority to vacate or enjoin them because of § 1252(f)(1) and (e)(1)(A). The D.C. Circuit rejected both arguments, 2020 WL 4032652, at *17-18, and for the same reasons argued by Plaintiffs.

Subsection (f)(1) provides that generally "no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or constrain the operation" of 8 U.S.C. §§ 1221-31. As *Grace* noted, this provision "refers only to . . . the statutory provisions themselves," and thus it "places no restriction on the district court's authority to enjoin *agency action* found to be unlawful." 2020 WL 4032652, at *17; *accord* Pls.' Br. at 54-55.

Subsection (e)(1)(A), meanwhile, states that "no court may . . . enter declaratory, injunctive, or other equitable relief in an action pertaining to an order to exclude an alien in accordance with section 1225(b)(1) of this title except as specifically authorized in a subsequent

---

[10] *Grace* necessarily rejected the government's argument that that "the appropriate remedy" for any failure by USCIS to acknowledge the change in its choice of law policy "would have been a remand to allow the agency to correct" its error. *Grace* Appellants' Reply Br., 2019 WL 3987622, at *16.

9

paragraph of this subsection." Based on that plain language, *Grace* held that § 1252(e)(1)(A) does not apply "to the kind of challenge we face here, namely, a '[c]hallenge[] on [the] validity of the [expedited-removal] system.'" *Id.* at *17 (citation omitted, alterations in original); *accord* Pls.' Br. at 51 (same). "In sum, neither section 1252(f)(1) nor section 1252(e)(1) prohibit[] the district court from issuing an injunction." *Grace*, 2020 WL 4032652, at *18.

## CONCLUSION

Plaintiffs respectfully request that the Court grant their Motion for Summary Judgment (ECF No. 36) and their Motion for Leave to Serve a Supplemental Pleading (ECF No. 62), that it issue their proposed order (ECF No. 36-4), and that it apply the relief it grants to the September 2019 Lesson Plan as well.

Dated: July 31, 2020

Kathryn Austin (D.D.C. Bar No. NY0331)
Deepa Alagesan (D.D.C. Bar No. NY0261)
Mariko Hirose (D.D.C. Bar No. NY0262)
INTERNATIONAL REFUGEE ASSISTANCE PROJECT
One Battery Park Plaza, 4th Floor
New York, New York 10004
Telephone: (516) 701-4620
mhirose@refugeerights.org
kaustin@refugeerights.org
dalagesan@refugeerights.org

Respectfully submitted,

/s/ Justin B. Cox
Justin B. Cox (D.D.C. Bar. No. 1004233)
INTERNATIONAL REFUGEE ASSISTANCE PROJECT
PO Box 170208
Atlanta, GA 30317
Telephone: (516) 701-4233
jcox@refugeerights.org

Manoj Govindaiah (D.D.C. Bar No. TX0145)
Maria Osornio
REFUGEE AND IMMIGRANT CENTER FOR EDUCATION AND LEGAL SERVICES
802 Kentucky Ave.
San Antonio, TX 78201
Telephone: (210) 226-7722
manoj.govindaiah@raicestexas.org
maria.osornio@raicestexas.org

*Attorneys for Plaintiffs*